Good afternoon. We appreciate you coming over for this. And I apologize to you for the length of time it's taken for us to get to this. It's not been from lack of attention. It's sort of a head scratcher of a case to us. So we thought it best to hear oral arguments so we could kind of peruse some of the questions. And we were all here on other calendars this week, and it was convenient for us. So we appreciate you coming over. With that, why don't we hear from the appellant. Thank you, Judge Thomas, Judge Noonan, Judge Berzon. My name is David Porter. I represent the appellant in this matter, Jose Gonzalez Magana. Apprendi means many different things to different people. I think that this case, though, is relatively, and I use that word advisedly, relatively straightforward. The trial judge committed error at sentencing in this case by sentencing Mr. Magana to 30 years, concurrent on each of three counts, 10 years in excess of the statutory maximum of 20 years for the crime for which he was committed, for the crime for which he committed. Now, the error in this case, 10 years over the statutory maximum, was clear after Apprendi was decided, which was decided, of course, after the trial judge sentenced Mr. Magana. The only real issue here is what is the remedy for this error? And we propose that this court remand the case with instructions to the district court to impose a sentence of 20 years on each count to be served as it was originally imposed concurrently. Now, the government has two arguments why this should not be done. They rely on the government relies, one, on the stacking, the so-called stacking theory of 5G 1.2, and it relies on an argument about the plain versus harmless error standards of review. Now, as I pointed out in the petition for rehearing in this case, this case is controlled by United States versus Jordan, not United States versus Buckland as this panel originally ruled. But might it matter for that whether it is governed by plain or harmless error? Yes. Well, the Jordan panel applied the harmless error rule because in that case, counsel was, quote, prescient enough to recognize the Apprendi problem. The issue in that case, however, arose after Jones was decided by the Supreme Court. So there was already a ruling that under constitutional doubt in any event, Apprendi was the law of the land. Now, in this case, as I pointed out, Mr. Magana went to sentencing four months before Jones came out. His objection was to the amount of drugs. He filed that in his objections to the pre-sentence report, and therefore under a long line of very detailed analysis by the Sixth Circuit. Wasn't it fair? What was his objection? I'm not clear on this. What was his objection? His objection was that there was an insufficient nexus connecting him with the drugs in the case. Any drugs? Yes. But that would just undo the conviction. That was an argument to the jury, but it was also an argument to the judge that at least for some of these drugs, he should not be. That's what I'm trying to ask you. Was it a nexus to any drugs or was it differentiated by some drugs versus other drugs? Well, there were no such differentiation in the objections to the pre-sentence report. That is true. I think there was some amount of crack cocaine found on him or in the residence where he was arrested. And in the rest of the drugs, the methamphetamine concerned what happened at the trailer the next day, the search found of the trailer. But my point, Your Honor, is that this Court should follow the Sixth Circuit and say that preserving an error for a harmless error review is not a parlor game. You shouldn't require that the defendant foresee radical changes, which Jones and Apprendi were, in order to preserve the error for harmless error review. I just have a feeling that we've been doing that all the way through our post-Apprendi jurisprudence. I'm sorry. I believe that we have been doing that for good or ill throughout our post-Apprendi jurisprudence. In other words, we have been applying a plain error standard when Apprendi wasn't raised, even if it hadn't come down yet. But I believe, Your Honor, that no one, no defendant has really made the same argument I am making. I mean, none of the cases really spend a lot of time clarifying what the exact magic language would be to preserve an error for harmless error review. I mean, they've just either said it's one way or the other. So I think this case really squarely presents the issue. So what are the magic words? The magic words are that we object to the drug quantity determination. That doesn't seem to be what happened here. He objected to a finding that it was connected to any drugs. Well, I – So it wasn't the amount that he was – if he were right, he shouldn't have been sentenced at all to anything. Well, perhaps it was inartfully worded, Your Honor. It's only a two-page objection. But it is included – Do you want to read it so we get it? Sure. It's in our excerpts of record at tab D. And it says, the pre-sentence report attributes more than three grams of actual D meth found at the Prather site. There is a lack of an evidentiary nexus to defendant's role, and the government has failed to establish a sufficient nexus to the role played in the manufacturing of meth. The trial transcript only reveals defendant's payments of past due by an ex-wife, as testified to by the property manager. Defendant objects to the base offense level of 38 based on the lack of defined evidence linking defendant to any specific quantity of methamphetamine. So he's conceding that he was responsible for some quantity. I think that's an implicit – I think that's a fair reading. I think you're right, Your Honor. And I guess he wasn't disputing the quantity at issue. He was just disputing whether it ought to be attributed to him, right? I think so, Your Honor, yes. Does that make a difference? I don't think so. I think if you look at Stewart and Humphrey and the Sixth Circuit cases discussing this, and Leachman, they all talk about objections that are about as specific as the ones made by Mr. Magana's trial lawyer. And they're emphasizing to the court that it's just not prudent. It's self-destructive of the court to require defendants to list all of the objections that could possibly be made, even though they are foreclosed by Supreme Court authority. This court would be deluged, and the district courts would be deluged by litigants submitting these what would be under current law frivolous objections merely to preserve them because who knows what the Supreme Court might do. Apprendi was a revolution. Is the reason why this all matters so much is because it's the line between Cotton and Jordan? I mean, is that why the plain error harmless error matters so much? I think that's one reason, Your Honor. The other reason, I believe, is that it's a recent authority that I provided to the court. It's called United States v. Thomas. It's a Judge Tashima opinion. And in that case, the court remanded to the district court, as we are asking this court to do, remand to the district court for further proceedings, direct the district court to sentence the defendant as if he had been based on an unspecified quantity of drugs. In that case, the defendant did raise the error at trial because it did at the plea because it was a post-Apprendi case. How do you respond to the stacking argument? Your Honor, first of all, stacking is just is wrong under Apprendi itself. The State and Apprendi made an almost identical argument, and the Supreme Court rejected it. The majority said the Constitution. We have Buckland now, so let's start with Buckland. Okay. Buckland is both factually and legally distinguishable from this case. The most important part is factually. Buckland was arrested on three separate occasions over three months, and each of those arrests formed the basis for separate counts of the conviction. He had substantial additional criminal activity that was the basis for each one of those counts. In that context, stacking might make some sense, that you sentence the defendant consecutively for substantial additional criminal activity. In this case, by sharp contrast, as the Court has noted, we have basically one quantity of drugs, and Mr. Magana was seized. They found an entire quantity of drugs at the site, and then the chemist testified about what the laboratory could produce in terms of quantity, additional quantity of drugs. And so it's very distinguishable from that point of view. But is that an argument? That's not an Apprendi argument. No, it's not. Substantial for Apprendi. It's just an argument that this shouldn't have been done under the sentencing guidelines, that there shouldn't be. It's a substantive guidelines argument that you're making now. That's correct. That's correct. And on what basis? I mean, what about the guidelines supports it? Well, legally speaking, 3584 of Title 28 has a presumption that sentencing on multiple counts at the same time is imposed concurrently and not consecutively. In order for the judge to impose consecutive sentences, and that reflects a long tradition in Federal courts, that judges have that discretion. There is a preference for concurrent sentencing to avoid double counting. Now, if the judge wants to sentence consecutively, the statute refers him to or her to 3553, which has the traditional purposes of sentencing, rehabilitation, protection, the defendant's educational, vocational needs, et cetera. The 5G1.2 is framed in mandatory terms, shall sentence consecutively. But that is contrary to the statute, which says the judge shall consider if he or she wants to. Haven't we routinely applied this as written, the guideline? Well, Your Honor, it is routinely applied, but not as the way Bucklin did it as mandatory. As I pointed out, there is a long line of Ninth Circuit precedent both before and after Bucklin that says that despite the mandatory language in 5G1, the court has discretion. Right. But the problem really is that Bucklin seems to endorse a mandatory approach. So if you were writing this and you were distinguishing Bucklin, because obviously we have to follow it, how would you write it? I would write it, Your Honor, distinguishing it factually. I think that is a very, very important distinction between the two cases, that it makes sense and it's consistent with the guidelines to impose consecutive sentencing when there has been substantial additional criminal conduct. But the statute and statute section 994L2 of Title 18 talks about when there is conspiracy and then the same object of the conspiracy and warns judges that that should not be sentenced consecutively. So I believe that it's very important. Is that the only consecutive sentence here that's available between the conspiracy and the — I don't know enough about the indictment. There were three counts of the indictment, Your Honor. One is for conspiracy to manufacture. The other is for manufacturing. And the third is for possession with intent to manufacture. So without the conspiracy, they still could have gotten to the 30th, right? But the point, though, I'm making, Your Honor, is that this type of sentencing just rewards the government to split up into separate counts what is essentially a single course of conduct. And we've cited the Valesquez case from the Third Circuit at 304, Fed 3rd, 237. And another case called Valesquez-Zamora, which is a Fifth Circuit case, 253, Fed 3rd at 211, which discusses the evils of allowing the government to break the conduct down into several counts when it's essentially one course of conduct, and then to ask the court to impose consecutive sentencing on that. So — If — Yes, I'm sorry. I'm just trying to see how all the pieces fit together. If we disagreed with this or if we thought Buckland was binding on us, then do you lose without more because it doesn't then matter whether we apply Jordan or Cotton because you have two sentences instead of one? I do not believe so. Why not? And I think it goes back to the Thomas case that I've cited, which cites Banuelos and Velasco-Heredia. But I think in that case, you have to really determine whether it's — whether you're going to examine it under a harmless error or plain error standard. Because what Jordan — what Jordan — Jordan was also two counts. Right. And Jordan was — But now — And that also went to trial. Right. And that was a harmless error standard. And in that case, Judge Gould writing for this Court sent the case back for sentencing as if the defendant had been sentenced — sentencing based on an undetermined amount of drugs. If there are no more questions, I will ask to reserve the rest of my time for rebuttal. Your time has expired, but we'll give you time for rebuttal. Thank you. Good afternoon. May it please the Court, I'm Kathy Servatius on behalf of the United States. I was both the attorney who indicted the defendant, tried the defendant, and has been responding to the defendant's complaints for the last seven years. I want to point out to the Court that this is a petition for rehearing. That's not what I wanted to point out, because I'm sure the Court's aware of that. But as a petition for rehearing, you would expect that the defendant would be coming to you and arguing that you misunderstood something that he said in his brief or that there was something incorrect. The defendant conceded in his brief that it was plain error was applicable. His argument for getting out of the plain error review in his initial supplemental brief to this Court was based upon the fact that he found that a failure of the indictment to allege the quantity should be treated by the Court as jurisdictional and not subject to plain error review. It wasn't until Jordan was decided, and the defendant filed his petition for rehearing, that he's now arguing to the Court that he did preserve his argument under Apprendi and that it's subject to harmless error review. However, that argument was not made to the Court initially. It is something new. And I think that that's important, because as the law develops in this area, so do the defendant's arguments. When he initially filed his appeal in this case, and he's had three appeals. I think it's probably because he's been lucky enough to stay ahead of the curve, because he happened to file a third petition at the time they happened to get remanded for Apprendi, and he happened to be around when Jordan was decided and still wasn't foreclosed. It wasn't out of court. But I think his luck runs out because he doesn't have a properly preserved Apprendi argument. Now, although Apprendi and Jones weren't decided at the time he was sentenced, he could surely have made an argument that a Sixth Amendment right to indictment or notice from indictment and a Fifth Amendment right to indictment were violated. The evidentiary objection that he made at sentencing does not even address his Fifth Amendment claim, which is what he claims is controlling in this case and what distinguishes his case from Buckland. First of all, does anything turn on whether it's plain error or harmless error? If Buckland dictates mandatory stacking, is that the end of the case and do you win? I don't think the Court would agree that Buckland makes it mandatory. However, the courts that have interpreted the stacking arguments, and this Court did it. I mean, it was a F-second case in 19 – it was a 981. It was the United States v. Pedroli, a case that was out of the Eastern District, a case that the case is cited by the defendant. I mean, they specifically rejected this Court's decision in stacking in Pedroli in the Velasquez case that's cited by the defendant. But initially, the courts have the discretion to depart upwards or downwards from the sentencing guidelines. There were no views advanced at the district court level that there was any reason to treat this defendant differently when it came to his stacking arguments. So while the Court didn't frame it as stacking at the district court level, all this Court has done in Buckland is to suggest that that's how it would be. And if it can be fixed that way, there's no need to send it back. All right. And if that's true, what I'm really asking you is if that's true and if we stacked – if you were right that he hadn't asked for departure and therefore we stacked, do we ever get to the harmless error versus plain error question? Well, I think in Jordan, they got to the harmless error question specifically because you could not stack in that case because the defendant was sentenced to life. And there's no way you can stack to a life sentence. You could be convicted of eight 20-year counts, and it's still not going to come out to the theoretical life. So Jordan specifically limited itself to the situation where the indictment did not allege the quantities. The defendant didn't have notice. The defendant did make a proper objection. So is your answer yes, that if they're stacking, then that's all we have to decide? We don't have to decide anything else? That's what I'm trying to find out. Yes. I think that's one way of getting around all of the issues. But you'd have to concede that – I mean, Buckland, although it speaks in mandatory language, doesn't really hold that stacking is mandatory, does it? No, and the courts – the Ninth Circuit has never said it's mandatory. It said there's usually – there's got to be a reason to depart from the guidelines when it comes to finding that you're not going to give the guideline sentence to somebody when you could very well get there by stacking multiple counts. Right. So, I mean, if you look at the stacking argument, it seems to me that – I mean, it's difficult to use stacking to say, well, then you don't ever reach the – you would never exceed the maximum sentence because that's theoretical rather than based on the count, isn't it? Am I making any sense to you? Well, there again, it would go to the difference. So there is a difference, a distinction with plain error versus harmless because with plain error, you wouldn't care. Well, put it another way. You've already conceded that you care. The district judge never had a chance to address the question, nor did the parties, whether there should be – even if you characterize it as a departure, a departure from a stacked sentence because nobody ever characterized this as a stacked sentence. Correct. But you would think that a defendant who's facing a 30-year sentence would have presented any argument. It's a different argument to say that you ought to depart from a 30-year – a single 30-year sentence to you should not consecutively sentence me. You should depart in that respect. It's a different argument. And so if this turned out to be right, maybe what we do is remand, you know, for the judge to do that. We don't just do the 20 years, but we remand to do that. Well, Your Honor, I initially made a motion for remand that was opposed by the defendant so that the court could address the issues at the first instance. Well, I'm saying something very specific now. What he would address under that theory would simply be the stacking question. Well, in addition, I suppose, on remand, not to preempt your answer, but we do have the Lewis problem now where we've said basically that if you're going to depart by imposing consecutive sentences, then you have to make sure that the defendant has notice of that. The defendant is only required to have notice for an upward departure. Since this is under the guidelines, he wouldn't have been required to have any notice. And even if he was, it was clearly stated in the presentence report that the sentence that he was facing. I think that the Court should distinguish this case from Jordan 1 because it isn't a properly preserved apprendi argument. It's not a properly preserved constitutional argument. And there was only ever one quantity of drugs that the defendant was being convicted for. And that quantity has never been disputed. It wasn't disputed at the grand jury. It wasn't disputed at the trial court level. And it wasn't disputed at the sentencing level. So to find now that it could be disputed based on arguments that were never made, which could have been and would have been if there was something there, I don't think violates the defendant's rights. I take your point. But I think the argument counter to that is that you still have to show beyond a reasonable doubt under apprendi that he was sufficiently connected to the drug quantity at issue. No, Your Honor, I believe that is incorrect. I think that since apprendi there has been case law that talks about foreseeability and conspiracies. So, for instance, if we had a defendant who was convicted of three separate counts of distribution and he was only responsible or aid and abetted only one of those, the question would be the jury would have to find that the other two counts were foreseeable to him as having been committed by somebody else. However, in this case, the defendant was. But you have a jury finding in that case, right? But in this case, there's only one quantity and the crime is only one crime. So he's either guilty of conspiring for that crime or he isn't. But the amount that was the object of the crime doesn't have to be foreseeable to him, only other crimes that are going to be part or charged against him. This may be totally wrong because I'm having trouble thinking this through. But what Jordan ultimately decided was that not having something in an indictment is structural error. And that issue was left open in Cotton. Am I right so far? I'm not sure Jordan decided it was structural, but it was left open in Cotton. I thought that's how Jordan ultimately got to it. I think Jordan said Cotton didn't decide it, so we're going to find it's not harmless error. Because it's structural, no? I'm not sure that the Court has characterized it as structural. You have used the word structural, but how else do you get there? Well, after Cotton, how do you stay there? I mean, the government would argue to the Court that Jordan is incorrect. But it's an open issue in Cotton, and that's why it seemed to me that's what was being decided in Jordan. And that would apply whether you were applying – and once you've decided that, it would apply either in a plain error or in a harmless error case, right? Why not? If you decided that it was structural error, then Cotton couldn't have decided it the way that it did. It determined it was not jurisdictional. Right. And these courts' jurisprudence in regards to indictments has always held that you have to be very strict in interpreting the indictment because, for instance, if there's an error in the indictment, I guess the reason is because in plain error, even if it's structural error, you still have to prove that it affected substantial rights as part of the plain error standard. That presumably is why. Because the plain error standard brings the prejudice back in at that point. That's the reason. Okay. But the Court's always interpreted, I believe, as structural because they've said it's jurisdictional and Cotton did away with the jurisdictional distinction when it came to charging elements in a grand jury proceedings. Other circuits who have interpreted Cotton have applied Cotton similarly to a harmless error. They've not found that an error in an indictment is structural. And they have found that it's harmless error if once you see all the evidence that would be presented and you know there was no argument to the contrary, they find, based on the jury convicted beyond a reasonable doubt, if the evidence is not disputed, if the evidence is overwhelming and uncontroverted, they've similarly found harmless error where the indictment has failed to allege quantity. But the problem in what Jordan says and the problem that it points to, it seems to me it was finding structural error, is that the error is really at the grand jury level, not at the trial level. And why would that make a difference? I mean, in the jury level, you're finding 12 people would have found a certain way and you're asking to find 16 people. There are too many unknowns to be able to be saved with any confidence, let alone beyond reasonable doubt that the error was harmless. So it seems to me it's saying it is a structural error case, but I'm not sure that makes sense. I don't know what evidence was presented to Jordan. However, you can determine what was said to the grand jury and what they would have convicted on based on looking at the transcript, what evidence was presented to the grand jury. And it's a probable cause standard. You can similarly look at whether the defendant was on notice of what was in it. Now, this Court in Thomas has said that these are not elements of the offense, so the arguments regarding indictments where an element of the offense is not alleged in the indictment, therefore it automatically has to be reversed, isn't applicable because these are fundamentals. They are like elements, but they are not elements. So there's no impediment to the indictment by failing to allege the quantity. Functional equivalent of elements, whatever that means. Well, I would suggest to the Court what it means is, is that it's not, since it doesn't have to be in the indictment for purposes of charging the crime, that the Court can look to see whether or not it was harmless. That makes it different than other cases with indictments where elements are not charged. It's not actually an element. But it should be shown to the grand jury. And when this Court in Jordan talked about it, they talked about what the defendant was on notice of. And I pointed out to the Court that this defendant was charged by a complaint that told him he was looking at 10 years to life based on quantity. And he was advised by the magistrate judge that that was his penalty that he was facing. And then again, at sentencing, it was in the PSR if he wanted to object to it there. And he didn't object to it at sentencing. So the defendant was on notice. And I would suggest to the Court that given the light of the law, the defendant didn't make the objections because he didn't have the evidence to suggest that he wouldn't be subject to the term. So unlike Jordan, I provided the Court with information that it can make that determination. And I think that to argue that a defendant who's looking at 30 years under the sentencing guidelines wouldn't have objected to quantity if he's had some evidence that it was an incorrect estimate, the defendant would have done so. My objection to something there. I mean, what's read to us before in terms of the objection was some sort of an objection to the quantity, it seemed to me. But again, it wasn't to quantity. It wasn't to quantity. Well, it was ultimately because what he said was you can't link me to any particular amount, although I'm not contesting that there was some amount. Doesn't he admit the three grams or something to start with? He says the pre-sentence report attributes more than three kilograms of actual meth, which is the amount required to get the top of the sentencing guidelines. He says there's a lack of evidentiary nexus to the defendant's role. Well, is that an admission that there is the minimum there? No. All he does is the defendant in this is saying that this is what the pre-sentence report is attributing to me. He's nowhere in there agrees that that's correct. No, but he's objecting to it going beyond. I don't believe the Court's correctly reading it. I mean, there are two questions about that objection. One is whether it's an adequate as an apprenti objection, which is certainly arguable. But the other is whether it's adequate as an amount objection, and that seems to me it is. I don't believe so, Your Honor. Usually when you have amount objections, you have is it 500 kilograms, 1,000 kilograms, or 10 kilograms. An amount objection would be this lab did not have the capacity and did not produce the quantity of methamphetamine at issue. That is not what is being alleged. The defendant is not alleging that there's any dispute as to the quantity that was found at the methamphetamine laboratory. He's saying none of it should be attributed to him because his role wasn't sufficient to bring him to that. But why isn't that a quantity? This amount should not be attributed to him. That's a type of quantity objection. It's a legal objection. It's not a factual objection. It's not a factual quantity objection. I find it very hard to make that distinction. Well, if the court were to put itself at the district court level, would the court be on notice that there should be some evidence presented that was challenging the amount that was in the presentence report? Yeah. At least as to him. And what facts would you establish? You would not establish facts that talk about the amount of drugs at issue. You would be talking about the defendant's role to that. And in this case. But that can't possibly be right. I mean, if, for example, he had come in and said, as to these 30 grams, it shouldn't count for me because I wasn't around. That doesn't count. There was only one quantity. Well, I understand that. But your notion. There wasn't different amounts in different places. This is mine. That's not. It isn't like Nordby. These marijuana plants are mine, but these are not. I mean, this was methamphetamine in a liquid solution that was in a pail. Or two pails that were right next to the manufacturing. He didn't argue, this pail is mine, this pail is not. He said, I don't have enough connection for this laboratory for you to sentence me on any amount that's there. So there's no question as to the amount that is at issue in the case. The interesting part of that, though, and I think the defense makes a fairly good argument. I don't know where it goes legally, but essentially you're saying there's only one amount involved, but you've got, I think as the district court put it, three crimes for the price of one. And you're arguing stacking is appropriate on that. So it's an interesting, I mean, it's an interesting, the way the pieces come together in this case is sort of interesting. Well, normally with conspiracies you have one crime, but you might have different events that make them up. In this case, the defendant's sentence was higher, perhaps, than most because of other items. I mean, he got enhancements because of his obstruction of justice for his perjured trial testimony. He failed to get acceptance of responsibility for going to trial. I mean, having the multiple counts will now permit him to be distinguished from another individual. I mean, the guidelines say, based on these circumstances, his sentence should be this high. And in United States v. Pedroli and all of the stacking cases since, not the least of which was United States v. Sua, the courts have said, we stack to get a guideline sentence because the guidelines take into account the specific relevant conduct for each defendant. If he should be capped at 20 years, he gets a freebie line on the stand. I mean, his sentence is taking into account all relevant conduct. And regardless of whether it's one count or two, Congress at least has made a distinction that the defendant should be charged with conspiracy and a substantive count. And this Court has said before that they can be sentenced consecutively and that double jeopardy isn't violated by those convictions. But there still is a difference as to how it would have played out in a district court had he been sentenced that way, because the arguments that would have been made and the availability, for example, of a departure of not doing it, would have been available to be argued to the district judge and it wasn't here. So that's a difference. Your Honor, I'm confident that if the Court had remanded the case at the government's request, Judge Coyle would have sentenced this defendant as he was previously sentenced. And I'm confident if the case gets remanded back, this defendant will be sentenced to 30 years. Well, that may well be, but conceptually it's a difference. You're talking about theoreticals, but when you actually see the facts, there weren't arguments made for down – there were arguments made for downward departures, the overrepresentation of criminal history category. There was another argument that was made about getting a minor role, which is not exactly a departure. But the Court rejected all of those. And what other facts would a defendant bring to the attention? I said that you were triple counting a single set of events, which could have been presented to Judge Coyle as a reason to down – And Judge Coyle would read the sentencing guidelines that say it doesn't matter how many convictions he has, stack them to get the guidelines. Then you're saying it is mandatory. I'm not saying it's mandatory, but I'm saying there aren't any facts presented. But it's mandatory in the sense that the fact that you're stacking a set of crimes that all arise out of the same incident is not a reason for a downward departure is what you're saying. There's no distinction in the guidelines for that. So it's mandatory unless there's a downward departure available of a different kind, an ordinary downward departure. But the consecutiveness, you're saying, is mandatory. My understanding is the basic argument on the other side is that it's not mandatory in that sense, that a judge could not give consecutive sentences simply because they're consecutive sentences for a single factual circumstance. The Court doesn't have any case law that suggests that that's the proper reading of the law. This Court has said that if you're going to depart downward, if you're not going to follow the stacking rules, it's a downward departure. Right. So you're limited to requests for downward departures based on other factors that would be considered. Some factors were presented to the Court for downward departure, and they were rejected from a 30-year sentence. Why would the Court not follow the sentencing guidelines given the same facts? And what different facts weren't presented that would be presented that weren't important enough to have been presented when the defendant was facing 30 years? It is a downward departure. The Court has said that the mandatory nature of 5G does not violate, the Court does not conflict with Section 3584 because there's a possibility that the Court can exercise discretion for downward departures, but the Court's discretion is limited to the basis that would otherwise be available for downward departures. The Court couldn't, for instance, say, I don't believe that these cases should be concurrent and not set a reason for it, because this Court requires that there be a valid basis for a downward departure if the Court's not going to follow the sentencing guidelines. The stacking provisions are mandatory to the same extent that any other section of the sentencing guidelines are mandatory. If the Court finds there's more than 3 kilograms of actual methamphetamine, the Court must provide a level 38. It's mandatory to the same extent as any other factor that went into the defendant's sentence. Well, I think getting back to your initial point, what they might choose to contest in resentencing is the calculation of what that amount could have produced. I mean, that's the typical objection now. In other words, we're talking about a projection of amount of what it could produce rather than an amount that was actually found. Well, in this case, Your Honor, it was actual methamphetamine in a liquid solution. Right. But then the calculation by the chemist was 9 kilograms of actual methamphetamine and 13 kilograms of liquid solution. Right. But it says it could have produced approximately 10 to 25 kilograms of actual de-meth, right? But what it means, it's not like we had chemicals somewhere and somebody made an estimate of what would have been produced. Finished methamphetamine had been produced. It was in a liquid solution. What did you mean at the sentencing? I'm looking at the sentencing transcript. And you referenced the objections to the PSR. And you said, as to the quantity of drugs, the drugs the defendant was convicted of conspiring in aiding and abetting the manufacture of methamphetamine, the quantity was proven at trial should be sufficient to account for the level 38 that the pre-sentence report gives the defendant. So it seems to me that you were construing his objection to be one as to quantity. Am I misreading your comments, sir? I'm saying he was convicted of a crime, and that was the amount that was proven. Right. But in the sentencing, I'm getting back to the question of whether he's waived this or has sufficiently raised quantity. At the sentencing hearing where the court asked you to address the objections, you respond not to saying, well, he was obviously connected to it, or you didn't say he didn't raise quantity. You said, as to the quantity, we proved it at trial. The reason I'm giving you a chance to respond, because it seems to me that creates the inference that at least you thought quantity was at issue. I did not believe quantity was an issue at trial. I believe the defendant was trying to say that he wasn't responsible for the quantity that was there. Right. So I'm just asking you to explain your comments at the sentencing. Your Honor, I apologize to the Court. I haven't read my sentencing comments, and I did them six years ago. Sure. But let's suppose that the Court interprets it as the government construed these objections as an objection to quantity. It's still not a constitutional objection. It still doesn't alert the Court at all that he was sentencing the defendant beyond the statutory maximum as the defendant construed it. But it does have something to do with whether there's any point in sending anything back to anybody. In other words, whether there's any possible factual dispute that could ever develop here in terms of plain error. I still believe, and I still strongly believe, if there was a factual dispute, the facts would have been in the sentencing hearing, and there weren't any. Okay. Any further questions? Thank you very much for your argument. We'll give you five minutes. Thank you, Your Honor. Sentencing was done by Judge Crocker. In this case, not Judge Coyle. Judge Crocker is since deceased. And Judge Crocker sentenced, apparently based on his consideration of 3553 factors, that concurrent sentences in this case were appropriate. Another point I want to make is that we didn't. They were appropriate if one of them was 30 years under the guidelines, but not if they weren't appropriate under the guidelines if one of them was 20 years. Isn't that the problem? No. Well, I don't think so, Your Honor. I think that sentencing concurrently or consecutively has to do with the judge's conception of whether there are different. Well, if it wasn't for the guidelines. But I am having a hard time seeing why Buckland for good or ill doesn't say that the statutory maximum for any count in a case involving multiple counts and the mandatory provisions of 5G1.2D come into play regarding the question of consecutive sentences. And they go on later. The district court must impose consecutive terms of imprisonment to the extent necessary to achieve the total punishment. So what do we do with that? Well, you say that that guideline is inconsistent with the statutory requirement. I said Buckland is wrong, and we go on bunk. Now, what do we, this three-judge panel, do with this language I'm reading from Buckland? Well, in that sense, I think you distinguish Buckland factually in that that reading of the guideline might make sense when there is additional criminal conduct. He was arrested on three separate occasions. You know, he didn't learn. He was arrested on three separate occasions, and that was the basis for the separate counts of conviction. Nothing in this opinion suggests that that was the reason why they thought this was mandatory. In the case of multiple counts of conviction, the guideline instructs that if total punishment mandated, et cetera, et cetera, it doesn't say anything about the facts of this case. I'm sure that that was on Judge Cott's mind when he wrote that opinion, Your Honor. We did actually, I know it's been a long time, but on page 12, note 7 of our opening brief filed in March 2001, we did say the error in this case was committed at sentencing, before which Mr. Magana filed his timely objection, citing the objections to the pre-sentence report. So we did, in fact, argue that from the very beginning. Subsequent changes in the law with Cotton and so forth have led to different emphasis in our arguments. But sometimes you catch the wave, sometimes the wave catches you, I guess. Thank you, Your Honor. About the error in Jordan, the error, there were several errors in Jordan. There were errors throughout, the error in the indictment, the error in the notice, the error of not describing to the jury, requiring the finding, the error at sentencing. And while Jordan doesn't use the term structural, I think that that is the way you must view the case. I think that's true. But I come back to what I asked you before, because I thought about your answer, and I don't think it works, and that is if the stacking is right, is there anything left to this case? I think you need to, if you believe that stacking is right under Buckland, you need to Something before about Jordan was also several counts, but that doesn't work, because Jordan specifically said it wasn't, they were treating it as a case in which there Well, Your Honor, I think that if you decide that Buckland's stacking argument is controlling, that this Court should send back the case to the district court for sentencing, not just to reform, as the government asked in the first place, oh, well, you send it back and the district court has no discretion about how it's going to sentence consecutively or concurrently. This Court, I believe, needs to write a reasoned opinion and discuss what, first of all, has to reverse the conviction or the sentence, has to vacate or reverse the sentence, because there has been error. Then remand and explain to the Court why this is not a mandatory stacking provision. It's mandatory on its face, but to apply it mandatorily would be contrary to the statute. Is the government right that all we mean by nonmandatory is that you can apply the ordinary departure, but not a departure simply for the stacking? I don't think so, Your Honor. And that goes back to Vazquez and Vazquez-Zamora, the Fifth and Third Circuit cases. I don't think that's the only area that, unless you're going to depart, then you must follow that, because 3553 requires the district court to take into account other factors besides departures, rehabilitation of the defendant, protection of the public, deterrence and so forth. So I would ask this Court, first of all, to hold that Buckland is factually and legally distinguishable and to follow the Jordan case. If it does not, however, it decides to follow the Buckland stacking analysis, I would ask the Court to reverse the sentence on the three counts of conviction, remand to the district court with instructions that it should follow 3553. And I just want to make one more point, Your Honor, that at sentencing, in fact, the pre-sentence report did suggest that Judge Crocker could depart downward from level three. Mr. Magana does not have any prior felony convictions, and that was an option that was put out by the pre-sentence report, and Judge Crocker finally decided not to go with that option. But I think that there would be a basis for downward departing, and there would be a basis for not following 5G1.2 should this Court remand. So I don't think it would be an utterly futile remand. And I think, more importantly, that the district court should know how to interpret the statutes versus 5G1.2. Well, thank you both for your arguments. The case just heard will be submitted. We appreciate your patience and attention to this case. You've lived with it for a long time. We have, too, and we'll try to get to it as soon as we can. You might ask me, Judge Crocker, why is it that you live in the district court so often? Because I'm familiar with Judge Crocker. I tried a case in front of Judge Crocker when I was in private practice, so I'm quite familiar. Thank you very much. Thank you, Your Honor. Ms. Corker, you're suspended for concession. The stand is adjourned. Thank you. Thank you.
judges: Noonan, Thomas, Berzon